## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Alisha Phillips and                                  Civil No. 08-4419 (DWF/JJG)
Marshall Phillips,

                          Plaintiffs,

v.                                                        **MEMORANDUM**
                                                    **OPINION AND ORDER**
Messerli & Kramer P.A.,
Brian A. Chou, Christine Doe,
Erin Doe, and Sarah Doe,

                          Defendants.

---

Samuel J. Glover, Esq., Samuel J. Glover & Associates, LLC, counsel for Plaintiffs.

Derrick N. Weber, Esq., and Truman W. Schabilion, Esq., Messerli & Kramer P.A., counsel for Defendants.

---

## INTRODUCTION

This matter is before the Court on the motion of Defendants Messerli & Kramer P.A. ("Messerli"), Brian A. Chou, Christine Doe, Erin Doe, and Sarah Doe to dismiss the complaint brought by Plaintiffs Alisha and Marshall Phillips.  For the reasons set forth below, the Court denies the motion.

## BACKGROUND

FAC Group, Inc., f/k/a Retailers National Bank ("FAC Group"), sued Alisha Phillips in state court in Chisago County, Minnesota, to collect a consumer debt and obtained a default judgment against her.  Defendant Messerli, a law firm, represented

FAC Group in this action.  After obtaining the judgment, Messerli served a third party levy upon Wells Fargo Bank ("Wells Fargo") and attached $409.03 in a bank account Alisha Phillips held in her own name, as well as $2,530.32 held in a bank account jointly with her husband, Marshall Phillips.  Plaintiffs allege that the funds in the joint account were given to them as wedding gifts.

Alisha Phillips learned that these funds had been frozen when she checked her bank accounts via the Internet.  She contacted Wells Fargo to inquire about the freeze on the accounts and was directed to contact Messerli.  Plaintiffs allege that when they contacted Messerli to inquire about the basis for the freeze, Messerli employees, Christine Doe, Erin Doe, and Sarah Doe, provided them with misleading and inaccurate information about the debt.  Plaintiffs allege that when Marshall Phillips called to inquire whether Messerli had properly identified Alisha Phillips as the debtor, Sarah Doe stated that they had the right person because Alisha Phillips had unpaid medical bills.  Plaintiffs allege Alisha Phillips had no unpaid medical bills.

Plaintiffs claim that Defendants' actions violated the Fair Debt Collection Practices Act ("FDCPA").  Plaintiffs also claim that Defendant Messerli wrongfully levied upon the funds of Marshall Phillips in the Plaintiffs' joint bank account and that this act constituted conversion and negligence.[1]

---

[1]     Plaintiffs originally claimed that Messerli had engaged in wrongful garnishment. As Messerli utilized a third party levy rather than garnishment, Plaintiffs have amended their complaint to remove the wrongful garnishment claim and assert wrongful levy instead.

**DISCUSSION**

Defendants argue that this Court lacks subject-matter jurisdiction and that the

Plaintiffs fail to state a claim on the merits.[2]

## I.       Standard of Review

In deciding a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure, a court assumes all facts in the complaint to be true and construes all

reasonable inferences from those facts in the light most favorable to the complainant.

*Morton v. Becker,* 793 F.2d 185, 187 (8th Cir. 1986).  In doing so, however, a court need

not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview*

*Gardens,* 183 F.3d 799, 805 (8th Cir.  1999), or legal conclusions drawn by the pleader

from the facts alleged.   *Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir. 1990).

A court may consider the complaint, matters of public record, orders, materials embraced

by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss

under Rule 12(b)(6).   *Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir.

1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a

claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955,

1974 (2007).  Although a complaint need not contain "detailed factual allegations," it

---

[2]       Defendants' motion to dismiss cites Federal Rules of Civil Procedure 12(b)(2), which addresses lack of personal jurisdiction, and 12(b)(5), which permits dismissal for insufficient service of process.  Defendants argued that this Court lacks personal jurisdiction over Defendant Chou, an attorney with Messerli, because he had not been served at the time Defendants filed this motion.  Defendant Chou has now been served. Therefore, the Court does not address this argument or Rules 12(b)(2) and (12)(b)(5).

must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 1964-65. This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 1965.

The standard of review applicable to a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) is somewhat different. In determining whether jurisdiction exists, a district court is free to weigh evidence to satisfy itself as to its power to hear a case. *Osborn v. U.S.,* 918 F.2d 724, 730 (8th Cir. 1990). A district court may consider matters outside the pleadings in determining its jurisdiction, and doing so does not convert a motion to dismiss into a motion for summary judgment as it would under Rule 12(b)(6). *Deuser v. Vecera,* 139 F.3d 1190, 1192 n.3 (8th Cir. 1998) (stating that even though the district court went beyond the allegations in the plaintiff's complaint in deciding to dismiss, the court properly did not treat the motion as one for summary judgment); *Osborn,* 918 F.3d at 730 (stating that in considering lack of subject-matter jurisdiction under Rule 12(b)(1), the court may proceed as it could not under Rule 12(b)(6) and Rule 56; no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts does not prevent the court from evaluating for itself the merits of jurisdictional claims).

In this case, Defendants have not yet answered and, for the purposes of this motion, have not disputed the facts. Therefore, the distinction between the standards of review applied under Rule 12(b)(1) and Rule 12(b)(6) is not determinative.

II.     **Subject-Matter Jurisdiction**

Defendants argue that the Court is barred from considering this matter under the *Rooker-Feldman* doctrine.  The Court, however, concludes that it has subject-matter jurisdiction over this case.

Federal courts other than the United States Supreme Court lack subject-matter jurisdiction to hear challenges to state court judgments.  *Lemonds v. St. Louis County,* 222 F.3d 488, 492 (8th Cir. 2000) (citing *Dist. of Columbia Ct. of Appeals v. Feldman,* 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416 (1923)).  A district court does not lack jurisdiction over every case in which a plaintiff seeks a result different from the one it obtained in state court; rather, *Rooker-Feldman* is implicated in the subset of cases where a losing party in state court subsequently complains about, and seeks review and rejection of, the state court's decision.  *Skit Int'l, Ltd. v. DAC Techs. of Ark., Inc.,* 487 F.3d 1154, 1157 (8th Cir. 2007) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 292 (2005)).

Specifically, federal courts are precluded from adjudicating claims that are "inextricably intertwined" with state court judgments.  *Lemonds,* 222 F.3d at 492 (citing *Feldman,* 460 U.S. at 482 n.16).  A federal claim is "inextricably intertwined" with a state court judgment when "the federal claim succeeds only to the extent that the state court wrongly decided the issue before it."  *Id.* at 493 (quoting *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 25 (1987) (Marshall, J., concurring)).

Defendants argue that Plaintiffs' claims arise as a result of the state court judgment entered against Alisha Phillips and that to entertain Plaintiffs' claims would

void the judgment by penalizing the creditor enforcing the judgment and its counsel,

Messerli.  Therefore, according to Defendants, Plaintiffs' claims challenge the state court

judgment and *Rooker-Feldman* bars this Court from considering Plaintiffs' claims.

Defendants rely on *MSK EyEs Ltd. v. Wells Fargo Bank, National Association*,

No. 05-cv-999 (DSD/SRN), 2007 WL 1965549 (D. Minn. July 3, 2007), in support of

their contention that *Rooker-Feldman* requires dismissal.  In *MSK*, the federal plaintiffs

had been defendants in state court actions brought by Wells Fargo in Hennepin and

Ramsey Counties.  The parties entered into a settlement agreement in connection with the

litigation in Hennepin County, and MSK also was the subject of a default judgment

against it in the action in Ramsey County.  Subsequently, the plaintiffs/state court

defendants sued Wells Fargo in federal court alleging a variety of claims, including that:

(1) Wells Fargo breached the settlement agreement by obtaining the Ramsey County

default judgment; (2) Wells Fargo defamed them when it collected on the Ramsey

County default judgment by garnishment; and (3) Wells Fargo's collection of the Ramsey

County judgment tortiously interfered with MSK's business relations.  The district court

determined that the claims in the federal action sought damages for injuries incurred as a

direct result of Wells Fargo's obtaining and enforcing its state court judgment.

Therefore, the court dismissed the plaintiffs' claims "to the extent [the]  . . . claims seek

damages arising out of the Ramsey County default judgment" pursuant to

*Rooker-Feldman*.  *MSK*, 2007 WL 1965549, at *6.

Following oral argument in the present case, however, the Eighth Circuit reversed

the district court's holding with respect to the applicability of the *Rooker-Feldman*

doctrine in *MSK*. *MSK EyEs Ltd v. Wells Fargo Bank, Nat'l Ass'n*, No. 07-2825, 2008

WL 4763442 (8th Cir. Nov. 3, 2008).  The Eighth Circuit held that there is a distinction

between claims attacking a state court decision and claims attacking an adverse party's

actions in obtaining and enforcing the state court decision.  *Id*. at *5.  Therefore, the

Eighth Circuit concluded that MSK could maintain breach of contract claim for Wells

Fargo's alleged breach of the settlement agreement without attacking the underlying

judgment and could bring tort claims arising from Wells Fargo's enforcement of its

judgment without rendering the judgment invalid.  *Id*.

It is clear that Plaintiffs' claims are not barred by *Rooker-Feldman*, under *MSK* or

otherwise.  The Plaintiffs do not challenge the validity of FAC Group's judgment against

Alisha Phillips or the collection of the debt from her.  Instead, Plaintiffs claim that

Messerli wrongfully levied on property belonging to someone else, Marshall Phillips,

who was not a party in the state court action.  Additionally, Plaintiffs claim violations of

the FDCPA that are wholly separate from the underlying debt and the methods employed

under state law to collect it.

Plaintiffs' claims are not "inextricably intertwined" with the state court judgment

against Alisha Phillips and none of the relief requested in the Plaintiffs' complaint

necessitates a finding that the state court incorrectly decided the issues before it.

Therefore, the *Rooker-Feldman* doctrine does not apply here and this Court may consider

Plaintiffs' claims.

## III.    Failure to State a Claim

The Defendants present a laundry list of arguments that Plaintiffs fail to state a claim upon which this Court can grant relief.  Among these are that Plaintiffs' claims are barred by *res judicata*, Plaintiffs fail to state a claim that Defendants wrongfully levied upon the funds under Minnesota law, the Plaintiffs' FDCPA claims are inadequate, and that the Plaintiffs' claims are barred by litigation privilege.  The Court addresses each of these below and finds all of them to lack merit.

### A.    *Res Judicata*

"The doctrine of *res judicata* applies to repetitive suits involving the same cause of action."  *Lundquist v. Rice Mem'l Hosp.,* 238 F.3d 975, 977 (8th Cir. 2001).  *Res judicata* precludes the relitigation of claims rather than the relitigation of specific issues, which is barred by the doctrine of collateral estoppel.  *Canady v. Allstate Ins. Co.,* 282 F.3d 1005, 1014 (8th Cir. 2002).  *Res judicata*, therefore, bars litigants from bringing claims on grounds that were raised or could have been raised when:  (1) a court of competent jurisdiction rendered the prior judgment; (2) the prior judgment was a final judgment on the merits; and (3) both cases involved the same cause of action and the same parties or their privies.  *Banks v. Int'l Union Elec., Elec., Tech., Salaried and Machine Workers,* 390 F.3d 1049, 1052 (8th Cir. 2004); *Canady,* 282 F.3d at 1014.  A claim is barred by *res judicata* if it arises out of the same nucleus of operative facts as the prior claim.  *Banks,* 390 F.3d at 1052.

Defendants contend that this Court is barred from considering this case under the doctrine of *res judicata* because, Defendants argue, this matter is a collateral attack upon

the state court judgment entered against Alisha Phillips.  Defendants also argue that the levy procedure utilized in this case is a supplementary proceeding to that state court action and that, to the extent that Plaintiffs wished to challenge the use of such a collection method, they were required to do so in the state court matter and an appeal from that judgment.

As noted above, however, the claims Plaintiffs assert here do not challenge the validity of the underlying state court judgment against, or the debt owed by, Alisha Phillips.  Plaintiffs have not sued FAC Group for the return of the money collected from Alisha Phillips pursuant to the judgment in its favor.  Instead, Plaintiffs are asserting independent claims under state and federal law against the Defendants arising from the actions they undertook in their collection efforts after the judgment was entered.  The two cases do not arise from the same nucleus of operative facts.

Further, the parties in the two cases are not the same; FAC Group is not a party to this action, and the Defendants were not parties to the action in state court.  Marshall Phillips also was not a party to the action in state court.  Defendants' arguments largely ignore these differences.  Though Defendants acknowledge that Marshall Phillips was not a party in the prior case, they nonetheless attempt to fit the circumstances here within the scope of *res judicata* by arguing that he should have made himself a party in that action.

Under Minnesota Statute section 551.04, subd. 16, a party claiming an "interest in any of the disposable earnings, other indebtedness, or money" which is the subject of a third party levy may intervene in order to assert a claim to the funds and join in the execution.  According to Defendants, Marshall Phillips should have intervened in the

action against Alisha Phillips to assert his interest in the levied funds and, because he did

not, his case here is an impermissible collateral proceeding.

This statute simply does not apply.  Marshall Phillips is not a creditor of Alisha

Phillips with a debt upon which he wishes to execute.  Further, in this action he does not

assert that he had a claim against or interest in *her* funds.  Marshall Phillips challenges

the Defendants' levy upon funds he asserts belonged to *him* that were in the couple's

joint account.

As the parties present in this case differ from those in the state court action, and

claims in this case arise from a different nucleus of operative facts and do not challenge

the state court judgment, *res judicata* does not apply.  Therefore, the Court is not barred

from considering the Plaintiffs' claims.

### B.      Wrongful Levy

Plaintiffs' Complaint alleges that Messerli wrongfully levied upon funds in the

Plaintiffs' joint bank account that belonged to Marshall Phillips.  The Court concludes

that Plaintiffs' Complaint states a claim with respect to this allegation.

#### 1.      Ownership of funds in a joint account

Under the Minnesota Multiparty Accounts Act, a "joint account" is "an account so

designated, and any account payable on request to one or more of two or more parties and

to the survivor of them."  Minn. Stat. § 524.6-201, subd. 4.  This statute is not intended to

govern the withdrawal rights of parties to a joint account, but applies to "controversies

between these persons and their creditors and other successors."  Minn. Stat. § 524.6-202.

Under the Multiparty Accounts Act "[a] joint account belongs, during the lifetime of all

parties, to the parties in proportion to the net contributions by each to the sums on

deposit, unless there is clear and convincing evidence of a different intent."  Minn. Stat.

§ 524.6-203.

In *Enright v. Lehman*, the Minnesota Supreme Court held that a creditor could not

garnish funds in a joint account unless there was clear and convincing evidence that the

depositing party intended to confer ownership of the funds upon the debtor.  735 N.W.2d

326 (Minn. 2007).  The court noted that joint accounts are considered a simple and

inexpensive way to transfer money from a decedent to a surviving joint owner, but that

this benefit would be lost if creditors of either party could reach any of the funds in such

an account.  *Id*. at 332.  Therefore, the Multiparty Accounts Act establishes a "clear

standard for determining ownership of funds and provides some measure of protection for

assets in a joint bank account from creditors of either party."[3]  *Id.*

---

[3]     Defendants contend that *Enright* clarified that Minnesota uses gift theory rather
than contract theory in determining the ownership of funds in a joint account.
Defendants are incorrect.  *Enright* contains a discussion of the common law methods
employed to determine ownership of funds in joint accounts:  gift theory, contract theory,
trust theory and joint tenancy theory.  735 N.W.2d at 331.  The court stated that prior to
the enactment of the Multiparty Accounts Act, Minnesota courts generally applied gift
theory, in which the depositor's intent to make or not make an *inter vivos* gift determined
ownership of the funds, but that "vagaries inherent in the application of that theory made
the label of limited value in predicting the outcome of actual cases."  *Id*.  The court went
on to state that it was not clear that Minnesota followed gift theory in determining the
ownership of accounts during the lives of all the parties.  *Id*.  Further, in one case, *Park
Enterprises v. Trach*, 47 N.W.2d 194 (1951), the court deviated from this pattern and
applied contract theory, holding that all funds on deposit in a joint account were subject
to attachment because the account agreement made all funds in the account property of
all depositors jointly.  *Id*.  In *Enright*, the court noted that the law on this issue was
uncertain, and that this uncertainty may have spurred the Minnesota legislature to adopt
the Multiparty Accounts Act.  *Id*.  The court expressly noted that its discussion of this
(Footnote Continued on Next Page)

Defendants argue that Wells Fargo disclosed the funds in the account as being "due and owing" to Alisha Phillips.  (Doc. No. 4 at 8-9.)  Therefore, Defendants contend that they had a right to levy upon all of the funds in the joint account.  Alisha Phillips may have had a right to withdraw the funds in the account, but withdrawal rights are not coextensive with a creditor's ability to attach funds in a joint account.  *Enright* clearly established that the power to withdraw funds from a joint account does not make those funds "due" to the debtor in the context of a creditor's collection effort.  735 N.W.2d at 335-336.  There the court stated that if all funds in a joint account were construed as "due" to any party on the account, and therefore subject to garnishment, the garnishment statute would negate the Multiparty Accounts Act.  *Id*. at 335.  In order to avoid that conflict, the court expressly held that "a joint account holder's power of withdrawal does not, by itself, mean that funds he did not contribute are 'due' him" within the meaning of the garnishment statute, Minnesota Statute section 571.73, subd. 3(2).  *Id.*

Minnesota law provides that a writ of execution attaches to "money due or belonging to the judgment debtor" that is in the possession of a third party, Minn. Stat. § 551.04, subd. 2(b), and that such funds are not attachable unless they are "due absolutely."  Minn. Stat. § 551.04, subd. 3(1).  Though *Enright* addressed garnishment rather than third party levy, its reasoning is equally applicable here.  The fact that the Plaintiffs had a joint account does not make all funds in that account automatically "due"

---

(Footnote Continued From Previous Page)
history was "illuminating," but unnecessary given that it held the Multiparty Accounts Act was unambiguous and that this statute, rather than any of the theories discussed, controlled the rights of creditors to attach funds in a joint account.  *Id.*

to either party such that all of the funds are subject to levy for the debts of either account
holder; to hold otherwise would be to permit the third party levy statute to override the
Multiparty Accounts Act.  That Wells Fargo notified Defendant Messerli that the funds
were due to Alisha Phillips does not require a result different from that provided by the
Multiparty Accounts Act.[4]

> 2.      Burden to prove ownership

Defendants next contend that Marshall Phillips bears the burden to show by clear
and convincing evidence that the funds in the joint account belong to him and that he did
not make such a showing in the state court action.  Therefore, Defendants argue Marshall
Phillips fails to state a claim upon which this Court can grant relief.

Defendants cite an unpublished Minnesota Court of Appeals decision as support
for their statement that this burden rests on Marshall Phillips.  *Bar-Meir v. N. Am. Die
Casting Ass'n*, No. C6-03-331, 2003 WL 22015444 (Minn. Ct. App. Aug. 26, 2003).  In
*Bar-Meir*, the debtor contended that funds were deposited into an account by his wife and
could not be attached.  The court stated that the debtor had not borne his burden to prove

---

[4]      Defendants contend that there is no way for them to determine whether funds
identified by a financial institution are in a joint account, and so potentially subject to the
Multiparty Accounts Act.  Plaintiffs note, however, and this Court agrees, that it is
possible for creditors to conduct discovery to determine the extent of a debtor's assets
before taking funds.  *See* Minn. Stat. § 575.02 (providing that a creditor may obtain an
order for a debtor to appear and answer concerning his or her property); Minn. Stat.
§ 575.04 (providing for an examination of the debtor under oath); Minn. R. Civ. P. 69
(providing that in aid of a judgment or execution the judgment creditor may obtain
discovery from "any person" including the debtor).

that the funds were deposited by another party.  *Bar-Meir*, however, is not controlling for several reasons.

First, the court in *Bar-Meir* characterized funds of a third party in a joint account as exempt, and declared that the debtor in that case had not met his statutory burden to show that an exemption applied.  This reasoning confuses two concepts.  Minnesota law provides that funds from certain sources cannot be attached or garnished and, therefore, such funds are "exempt" and the debtor must notify the creditor that he or she claims an exemption.  *See* Minn. Stat. §§ 550.37, 550.38, 550.39.  Exempt property, however, is still property of the debtor.  Funds in a joint account that belong to someone other than the debtor are not exempt; those funds simply are not the debtor's property to begin with.  Therefore, *Bar-Mair*'s burden allocation is based on a misapplication of the exemption law.

Second, and more importantly, *Enright* specifically addresses this issue and overrules *Bar-Meir*'s holding.  The court in *Enright* allocated to the creditor the burden to show by clear and convincing evidence that the funds in a joint account were intended by the depositor to belong to the debtor, stating this principle not once, not twice, but three times.  735 N.W.2d at 328, 331, 336.  Defendants' citation to a preceding, contrary, unpublished opinion from a lower court is most unpersuasive.

Defendants, nonetheless, contend that the burden is more appropriately placed upon the account holder to show entitlement to the funds because that party has knowledge of the depositor's intent.  Defendants' theory, however, would permit creditors to attach funds belonging to a non-debtor party against whom there is no

judgment, and to whom no notice has been provided, and would place upon that party the duty to come to court to prove ownership of the funds simply because the funds were in a joint account.  Even if this argument did not contradict the Minnesota Supreme Court's express holding in *Enright*, Defendants' "take now, ask questions later" approach flies in the face of the Multiparty Accounts Act.

Further, Defendants' contention that Marshall Phillips fails to state a claim because he should have raised this issue in the state court proceedings is unavailing.  In *Enright*, the debtor appealed from garnishment proceedings to challenge the garnishment of funds deposited into an account by the debtor's wife.  735 N.W.2d at 329-330.  Here, however, Marshall Phillips is not the debtor.  He was not a party to the state court action against Alisha Phillips and would not have received notice of that proceeding.  There is no case against Marshall Phillips and no judgment against him, nor is there any writ of execution permitting his assets to be attached.  Marshall Phillips is not barred from seeking relief in a forum of his own choosing by the existence of the separate suit against his wife.

### 3.    Equitable ownership of funds

Defendants contend that all of the funds in Plaintiffs' joint account were subject to levy because, as the funds came from wedding gifts to the couple, Alisha Phillips equitably owned all of the funds.  According to Defendants, Plaintiffs entered into a "special relationship of unity" when they married and gifts given to the couple are owned equitably by both of them.  (Doc. No. 4 at 35.)  Defendants cite several cases discussing marriage in various contexts unrelated to this case and the biblical Book of Matthew,

Chapter 19 verse 5, in which Jesus Christ is questioned by the Pharisees regarding divorce and he states that a man and woman become of one flesh upon marriage. None of the references cited by the Defendants actually hold that wedding gifts are equitably owned by each party to the marriage, and that all funds derived from wedding gifts and placed in a joint bank account are subject to levy for the debts of one of the spouses. In Minnesota, the Multiparty Accounts Act, rather than equitable doctrines or biblical principles, clearly controls the ownership of funds in joint bank accounts.

Further, courts in this country once adhered to a theory that when a couple married one party to the marriage owned the property of the other. Then, it was the husband who owned the property of the wife. *See Thompson v. Thompson*, 218 U.S. 611, 614-615 (1910) (stating that "[a]t the common law the husband and wife were regarded as one, the legal existence of the wife during coverture being merged in that of the husband; and, generally speaking, the wife was incapable of making contracts, of acquiring property or disposing of the same without her husband's consent"). Accepting Defendants' argument would require this Court to hold that Plaintiffs each owned the property in the joint bank account due to their marriage. This contradicts the Multiparty Accounts Act and would severely set back the development of property law. The Court, therefore, rejects the Defendants' argument.

### 4.    Tort theories for wrongful levy

Defendants also contend that Marshall Phillips fails to state a claim under the two tort theories he advances:  conversion and negligence. The Court disagrees.

Conversion is an act of willful interference with personal property that deprives another of its use and possession without lawful justification. *DLH, Inc. v. Russ,* 566 N.W.2d 60, 71 (Minn. 1997). The elements of common-law conversion are: (1) the plaintiff has a property interest; and (2) the defendant deprived the plaintiff of that property interest. *Lassen v. First Bank Eden Prairie,* 514 N.W.2d 831, 838 (Minn. Ct. App. 1994). The "intent, knowledge, or motive of the converter is immaterial except as affecting damages." *Larson v. Archer-Daniels-Midland Co.,* 32 N.W.2d 649, 650 (1948). Thus, the "innocent misapplication or deprivation of [property] owned by others is in the law no less a conversion because such was done innocently or in ignorance." *Herrmann v. Fossum,* 364 N.W.2d 501, 503 (Minn. Ct. App. 1985). Good faith is not a defense to a conversion claim. *Dain Bosworth Inc. v. Goetze,* 374 N.W.2d 467, 471 (Minn. Ct. App. 1985). Minnesota has long recognized a tort of conversion by wrongful levy. *See Lundgren v. W. State Bank of Duluth,* 250 N.W. 1, 1 (Minn. 1933) (alleging conversion by wrongful levy); *Lesher v. Getman,* 15 N.W. 309, 310 (Minn. 1883) (alleging conversion by wrongful levy).

Defendants contend that because they acted pursuant to a judgment against Alisha Phillips, their actions cannot constitute conversion. Once again, however, no judgment has issued against Marshall Phillips and there was no lawful basis for Messerli to levy upon any amounts in the Plaintiffs' joint bank account belonging to Marshall Phillips rather than Alisha Phillips. Plaintiffs' allegations, therefore, state a claim for conversion with respect to funds in the account that belonged to Marshall Phillips.

Defendants' argument with respect to Plaintiffs' negligence claim is similar. Defendants argue that Defendant Messerli acted pursuant to a lawful judgment and that the judgment provided justification for the attachment of property.  As noted above, however, the judgment only permitted the Defendants to levy upon property belonging to Alisha Phillips, and the allegations in the Plaintiffs' complaint relate to the wrongful levy upon the property of Marshall Phillips.  Defendants also claim that, under *Bar-Meir*, Defendant Messerli owed no duty to Plaintiff Marshall Phillips because it is the debtor's obligation to prove which party deposited the funds.  As discussed at length above, however, *Bar-Meir* has no precedential value on this point.  Therefore, Defendants' arguments are without merit.

The Court concludes that Plaintiffs' Complaint states a claim upon which relief can be granted with regard to the allegation that Messerli wrongfully levied upon funds in the Plaintiffs' joint bank account belonging to Marshall Phillips.

### C.     FDCPA Claims

Plaintiffs allege that Defendants violated the FDCPA in connection with communications related to debt collection.  The Court concludes Plaintiffs have stated a claim under the FDCPA.

Congress intended the FDCPA "to eliminate abusive debt collection practices by debt collectors."  15 U.S.C. § 1692(e).  Under 15 U.S.C. §§ 1692(d), 1692(e) and 1692(f), debt collectors are forbidden from conduct constituting harassment, oppression or abuse; from making false, deceptive or misleading misrepresentations; and from engaging in unfair or unconscionable practices.

18

Defendants contend that their actions did not violate the FDCPA.  Defendants argue that the FDCPA is intended to address egregious conduct, such as threatening the use of violence, obscene conduct, calling the debtor at all hours, lying about the debt and the like.  Defendants contend that their acts were, at worst, innocent mistakes that cannot form the basis of an FDCPA claim.

The FDCPA lists prohibited conduct in each of the sections cited above, but each section expressly states that its application is not limited to the conduct listed therein. Further, violations of the FDCPA are to be viewed through the eyes of an unsophisticated consumer.  *Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 317 (8th Cir. 2004) (stating that the unsophisticated consumer standard is "designed to protect consumers of below average sophistication or intelligence without having the standard tied to 'the very last rung on the sophistication ladder'" (citing *Duffy v. Landberg,* 215 F.3d 871, 874 (8th Cir. 2000)).  In addition, upon a motion to dismiss, the Court must view the facts in the light most favorable to the Plaintiffs.  Using the lens applicable to the inquiry at this stage of the case, the Court concludes that the Plaintiffs have stated a claim under the FDCPA.

Plaintiffs allege that they contacted Messerli when they learned of the levy upon their funds and they spoke on these occasions to the three Doe defendants, who are Messerli's employees.  Plaintiffs further allege that when they requested information about the debt, the Doe defendants:  told them inaccurate information about the age of the debt; told them that there was no documentation of the debt, but then later told them that they did have documentation but that it was unavailable to be examined; and told Marshall Phillips that Alisha Phillips had other unpaid bills, when she did not.

Plaintiffs' allegations are, at best, that they were given the run-around when they tried to find out about the debt and that Defendants misstatements made determining their situation more difficult.  At worst, Plaintiffs were deliberately or negligently supplied with misinformation.  While this is certainly not the most serious conduct prohibited by the FDCPA, and while Plaintiffs must still prove their claims at trial, the Court cannot conclude as a matter of law that the Plaintiffs have failed to state a claim under the FDCPA.[5]

### D.    Litigation Privilege

Defendants assert that Plaintiffs fail to state a claim because Defendants Messerli and Chou were engaged in post-judgment collection efforts and were required to be zealous advocates for their client.  Defendants contend, therefore, that the actions of Defendants Messerli and Chou are protected by litigation privilege and Plaintiffs' claims are barred.  The Court disagrees.

Minnesota recognizes a litigation privilege for statements made in judicial proceedings.  *Mahoney & Hagberg, PA v. Newgard*, 729 N.W.2d 302 (Minn. 2007) (stating that "[s]tatements, even if defamatory, may be protected by absolute privilege in a defamation lawsuit if the statement is (1) made by a judge, judicial officer, attorney, or

---

[5]    The Court's conclusion that Plaintiffs may proceed with their FDCPA claim disposes of another of Defendants' arguments as well.  Defendants requested that the Court dismiss the FDCPA claim, after which they argued it would lack jurisdiction over Plaintiffs' state law claims.  As the Court declines to dismiss the FDCPA claim, the Court does not address this argument further.

witness; (2) made at a judicial or quasi-judicial proceeding; and (3) the statement at issue is relevant to the subject matter of the litigation").  This privilege is not applicable here.

Litigation privilege does not permit attorneys to levy upon assets of a non-debtor against whom no judgment has been entered, and does not then prevent a person whose assets have been wrongfully attached from bringing suit to reclaim the funds.  Further, claims that an attorney has violated the FDCPA do not implicate the litigation privilege. *Heintz v. Jenkins*, 514 U.S. 291 (1995) (holding that the FDCPA applies to lawyers who regularly engage in collection of consumer debts on behalf of a client); *Nutter v. Messerli & Kramer, P.A.*, 500 F. Supp. 2d 1219 (D. Minn. 2007) (holding that FDCPA claims could be maintained against Messerli and that litigation privilege did not defeat such claims).

## CONCLUSION

The Court concludes that it possesses subject-matter jurisdiction over this case. Further, Plaintiffs state a claim upon which relief may be granted with regard to both their claims that Messerli wrongfully levied upon Marshall Phillips' funds and that the Defendants' collection activities violated the FDCPA.  Defendants' arguments to the contrary lack merit; indeed many of the Defendants' arguments are based on misstatements of the law and citations to cases that are clearly factually and legally inapplicable.  Therefore, Defendants' motion to dismiss is denied.

Accordingly, **IT IS HEREBY ORDERED** that:

1.      The Defendants' Motion to Dismiss (Doc. No. 2) is **DENIED**.


Dated:  November 20, 2008                    s/Donovan W. Frank
                                             DONOVAN W. FRANK
                                             Judge of United States District Court